UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

BRIAN MADONNA, )
                                                         ) Civil Action No.
                    Plaintiff, )
                                                          )
     - against - ) **COMPLAINT**
                                                              )
APPARATUS, LLC, REBECCA DALY, ) JURY TRIAL DEMANDED
and ROBIN ALLSTADT, )
                                                              )
                    Defendants. )
_____

Plaintiff, BRIAN MADONNA, by and through his attorney, KRISTINA S. HEUSER, P.C., hereby complains of the defendants as follows:

                  I.       PRELIMINARY STATEMENT

1. Plaintiff Brian Madonna was employed by APPARATUS, LLC, a furniture manufacturer based in New York City. He worked in their factory. Brian is a devout Christian. When his employer implemented a mandatory COVID-19 vaccination policy, Brian sought a religious exemption on the basis of his sincerely held religious beliefs. Defendants mocked and belittled Brian's religious objection, and denied his request for accommodation without engaging in the requisite interactive process or making any effort whatsoever to arrive at a reasonable accommodation. Brian was placed on unpaid administrative leave and then terminated for adhering to the dictates of his conscience and tenets of his faith.

                  II.       JURISDICTION AND VENUE

2. This court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 and over the pendent state law claim pursuant to 28 U.S.C. §1367.

3. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. §1391(b)(1) and (2) and (c)(2) based upon defendant's place of business and the location where the events giving rise to the claim occurred, respectively.

### III.   PARTIES

4. Plaintiff BRIAN MADONNA (hereinafter referred to as "plaintiff") was at all relevant times herein a resident of the County of Kings, State of New York. He was formerly employed by defendant and forced to relocate out of state due to defendant's unlawful termination of his employment.

5. Defendant APPARATUS, LLC (hereinafter referred to as "defendant"), is a corporation duly formed and existing pursuant to the laws of the State of New York. Defendant is a furniture manufacturer located in Red Hook, Brooklyn.

6. Defendant REBECCA DALY (hereinafter alternatively referred to as "defendant's representative") is the Senior Director of Human Resources for defendant. Upon information and belief, REBECCA DALY is a resident of the City and State of New York.

7. Defendant ROBIN ALLSTADT (hereinafter alternatively referred to as "the COO") is the Chief Operations Officer for the defendant corporation. Upon information and belief, ROBIN ALLSTADT is resident of the City and State of New York.

### IV.   FACTUAL ALLEGATIONS

8. Plaintiff was employed by defendant as a Finishing Associate.

9. The workspace plaintiff worked in at the time of his termination was an extremely large studio (likely a converted factory or warehouse) in Red Hook, Brooklyn.

10. Prior to moving to the Brooklyn studio, defendant's location was a small studio in Manhattan.

11. At the time COVID-19 began getting widespread attention and contagion was at its peak, plaintiff and the rest of defendant's employees worked in the Manhattan studio.

12. After a period of closure, upon reopening the studio in June 2020, defendant had rearranged its studio space so that employees could maintain a minimum of six feet of distance between one another at all times, It also required all employees to wear face masks, implemented cleaning and sanitization practices, required employees to assess if they had any symptoms of illness each morning and not report to work if symptoms were present, and even installed air purification systems throughout the studio. Beginning in November 2020, defendant implemented mandatory PCR testing as part of its COVID-19 prevention protocol. All of these measures were in place and complied with by plaintiff at all relevant times herein.

13. On August 31, 2022, defendant notified all its employees via email that it was implementing a mandatory COVID-19 vaccination policy. The email is attached hereto as Exhibit A.

14. The email did not set forth any allowable exemptions to the policy, nor was there any reference made in the email to a separate document containing a comprehensive policy.

15. Due to his sincerely held religious beliefs, plaintiff knew that he could not comply with the policy without violating his faith and conscience.

16. So, that very same day (August 31, 2021), plaintiff requested a religious accommodation. He did so via telephone directly to Human Resources Director Rebecca Daly, the sender of the email setting forth the vaccine mandate.

17. Ms. Daly seemed taken aback and did not know how to respond to the request. She stated that she would get back to plaintiff.

18. Defendant's representative did not get back to plaintiff for more than a week. Sometime during the first week of September, plaintiff was, without notice, summoned to the office of defendant's representative. Defendant Robin Allstadt, defendant's Chief Operations Officer, was present together with Ms. Daly in the office when plaintiff arrived.

19. During the conversation that ensued, defendant's representative and the COO grilled plaintiff over the basis of his requested accommodation and the sincerity of his religious beliefs. They went beyond asking about the sincerity of the beliefs, though, seemingly questioning the validity of the beliefs and demeaning plaintiff for holding fast to his Christian beliefs and biblical teaching.

20. Specifically, by way of example, when plaintiff explained that he could not receive into his body the COVID-19 vaccine because aborted fetal cells were used in the research and development of the vaccine, the COO stated to (in sum and substance): If you were truly pro-life you would get vaccinated to protect the lives of your co-workers and their family members.

21. On September 10, 2021, defendants finally emailed plaintiff an actual written policy.

22. Defendant's COVID policy required the following:

> This policy requires all full-time employees, part-time employees, new hires, on-site freelancers and on-site independent contractors

(the "Covered Group") of APPARATUS to be fully vaccinated against the COVID-19 virus by November 1, 2021, with limited exception. If a member of the Covered Group is granted an Exemption as defined herein, they must abide by the applicable COVID-19 related health and safety restrictions for APPARATUS (e.g., appropriate face coverings, social distancing, and frequent COVID-19 testing).

23. The policy purported to offer exemptions, to wit:

> I. MEDICAL EXEMPTION. Individuals in the Covered Group may be exempt from the vaccine requirement if a duly licensed health care provider certifies in writing that the COVID-19 vaccination may be detrimental to the individual's health. APPARATUS will provide reasonable accommodations to those individuals whose medical condition(s) contraindicates COVID-19 vaccination so long as the failure to be vaccinated does not prevent the individual from otherwise fulfilling their functional job duties. A. Medical exemptions may include allergies to vaccine components, a history of Guillain-Barré syndrome or other health ailments that make the vaccine risky for the individual. B. Written certifications from an individual's duly licensed health care provider should be submitted to Rebecca Daly, Senior Director of Human Resources at Rebecca.daly@apparatusstudio.com.
> C. Any such requests will be reviewed and granted on a case-by-case basis by APPARATUS. D. All individuals granted a medical exemption will be subjected to certain restrictions set forth in Sec. III. C. below and may be subject to other restrictions imposed by APPARATUS.
> II. RELIGIOUS EXEMPTION. Individuals who hold genuine and sincere religious beliefs which are contrary to COVID19 vaccination may be exempt after submitting a written proposal to that effect as required by APPARATUS. Such proposal should explain how receiving the COVID-19 vaccination conflicts with the individual's sincere religious belief or practice and how not receiving the COVID-19 vaccination will not otherwise prevent the individual's performance of functional job duties. The proposal may include any combination of the following: A. Statements and explanations from the employee that discuss the nature and tenets of their asserted beliefs and information about when, where, and how they follow the practice or belief B. Written religious materials describing the religious belief or practice C. Written statements or other documents from third parties, such as religious leaders, practitioners, or others with whom the employee has discussed his or her beliefs, or who have observed the employee's past adherence D. Proof of tithe, receipt for monetary or supplies gift or other donations to your place of worship Proposal for religious

  exemptions should be submitted to Rebecca Daly, Senior Director of Human Resources at Rebecca.daly@apparatusstudio.com. Individuals who apply for a medical or religious exemption will be notified in writing of the determination on their request, including whether the request has been approved, denied, or whether more information or documentation is needed before a decision can be made. You understand that to be approved, your request for accommodation must be both reasonable and not pose a direct threat to the health and safety of others at APPARATUS. General philosophical or moral objections to such vaccine shall not suffice as the basis for a religious exemption. Individuals granted a religious exemption will be subjected to certain restrictions set forth in Sec. III. C. below and may be subject to other restrictions imposed by APPARATUS. III. Additional Requirements for Individuals with Exemptions. Individuals who are granted a medical or religious Exemption pursuant to sections I or II above must (1) make arrangements at their own time and expense to take a Rapid COVID-19 Test (Antigen or PCR) twice weekly (the scheduling of which will be dictated by shift schedule) and email proof of a negative test result to Human Resources immediately upon receipt and (2) wear a mask covering their nose and mouth while at work (with the exception of when eating or drinking).

24. The full policy (and the email which it accompanied) is attached hereto as Exhibit B.[1]

25. On Friday, September 17, 2021, plaintiff [re-]submitted his exemption request pursuant to the instructions set forth in the documents emailed to him by defendants.

26. Attached as Exhibit C, and incorporated herein, is plaintiff's religious exemption request (with accompanying exhibits also submitted to defendants).

27. In it, plaintiff explained his sincerely held religious belief about the sanctity of life in the womb and why he cannot partake of a product that was generated by the slaughter of innocent human life, he cited Holy Scripture in support of his position, and even went above and beyond what is legally required by submitting proof that all four available vaccines in fact were tainted with the use of aborted fetal cells in the

---

[1] The written policy violates the law on its face in addition to as applied to Mr. Madonna in that it required employees to submit additional materials beyond their sincere profession of faith-based objection such as verification from a member of the clergy, proof of tithe, etc.

development of the product, and submitted letters from two clergy members attesting to the fact that plaintiff is a devout, practicing Christian and that his beliefs espoused in support of his request for a religious accommodation are sincere.

28. On Saturday, September 18, 2021, defendant's representative responded to plaintiff that he was being placed on leave while his request was under review. Defendant directed plaintiff not to come to work the following week.

29. On September 23, 2021, defendant's representative sent another email to plaintiff. In this email, defendant informed plaintiff that his request for a religious accommodation was denied. The email further stated that plaintiff had three options: get vaccinated now; get vaccinated later (before December 31, 2021) and be placed on unpaid administrative leave until then; or, resign. In other words, the choices given to plaintiff were to violate his sincerely held religious beliefs or lose his employment.

30. Plaintiff was unwilling to compromise his fidelity to his faith. Plaintiff also knew he did nothing wrong, and, therefore, did not give in to defendant's resignation demand.

31. Therefore, plaintiff remained on forced unpaid leave and, pursuant to the terms presented to him in the September 23rd email referenced above, his employment was terminated on December 31, 2021.

32. Plaintiff applied for unemployment, but the unemployment claim was disputed by defendants and plaintiff did not receive any funds during his period of unpaid leave.

33. Plaintiff was only able to find new employment out-of-state, so, in January 2022, plaintiff and his wife relocated.

34. Then, on March 25, 2022 (shortly after receiving notice from the EEOC that plaintiff filed a Charge of Discrimination against defendant), defendant's representative sent

plaintiff an email advising that his religious accommodation request had now been approved and plaintiff was invited to return to work.

35. The EEOC issued plaintiff a right-to-sue letter, which was never received by plaintiff directly from the EEOC, but was received by plaintiff's counsel via email on October 25, 2022 and forwarded to plaintiff thereafter. It is attached hereto, along with the email that accompanied it, as Exhibit D.

V. LEGAL ALLEGATIONS

**AS AND FOR A FIRST CAUSE OF ACTION**
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. §2000e-2
(Failure to Accommodate)
Against APPARATUS

36. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 above as though fully set forth herein.

37. Defendant had an obligation to afford plaintiff a reasonable accommodation based upon his religious beliefs.

38. Defendant's anticipated contention that forced unpaid leave constitutes a reasonable accommodation is belied by applicable caselaw. *See*, *e.g.*, *Jamil v. Sessions*, 2017 U.S. Dist. LEXIS 31815, at *23 (E.D.N.Y. Mar. 6, 2017, No. 14-CV-2355 [PKC][RLM]).

39. Defendant failed to engage in the required interactive process with plaintiff or make any effort to arrive at a mutually agreeable accommodation.

40. At all times plaintiff was willing to comply with defendant's policy regarding COVID-19 safety measures to be taken by employees granted exemption from defendant's vaccination requirement.

41. Further, defendant's anticipated conclusory assertion that granting plaintiff a reasonable accommodation would have caused defendant undue hardship, besides being unsupported by actual exploration of the feasibility of possible accommodations, is contravened by proven scientific evidence. An unvaccinated employee poses no greater risk to his coworkers than a vaccinated employee because vaccinated and unvaccinated alike carry and transmit the SARS-CoV-2 virus at equal rate. *See, e.g.*, [Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021 | MMWR (cdc.gov)]; *see also*, [Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK: a prospective, longitudinal, cohort study - The Lancet Infectious Diseases].

## AS AND FOR A SECOND CAUSE OF ACTION
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. §2000e-2
(Disparate Treatment)
Against APPARATUS

42. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 above as though fully set forth herein.

43. Although defendant pretended to offer religious exemptions to its vaccine mandate, in practice they did not.

44. Upon information and belief, defendant treated persons requesting medical exemptions from its COVID-19 differently (i.e., preferentially) to persons requesting exemption from the policy on the basis of sincerely held religious beliefs.

45. This disparate treatment on the basis of religion directly resulted in defendant taking adverse employment action against plaintiff, to wit: forced unpaid administrative leave, termination, and denial of unemployment benefits.

**AS AND FOR A THIRD CAUSE OF ACTION**
TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, as amended, 42 U.S.C. §2000e-3
(Retaliation)
Against APPARATUS

46. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34 above as though fully set forth herein.

47. Following plaintiff's initial request for religious accommodation from defendant's mandatory vaccination policy, the COO belittled and mocked plaintiff's sincerely held religious belief in the sanctity of unborn human life, and in so doing demonstrated her hostility towards persons of faith, which is imputed to defendant.

48. The COO's histrionic statement could have only been intended to harass and shame plaintiff for holding the religious beliefs that he does.

49. From the time of the submission of his initial request for religious exemption, plaintiff was subjected to retaliation in the form of a hostile work environment, forced unpaid leave, termination, and denial of unemployment benefits.

**AS AND FOR A FOURTH CAUSE OF ACTION**
NEW YORK STATE HUMAN RIGHTS LAW – N.Y. Exec. Law §296(1)
Against APPARATUS

50. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34, 36 through 41, 43 through 45, and 47 through 49 above as though fully set forth herein.

51. The actions of defendant against plaintiff as alleged herein violate the New York State Human Rights Law.

### AS AND FOR A FIFTH CAUSE OF ACTION
NEW YORK STATE HUMAN RIGHTS LAW – N.Y. Exec. Law §296
Against Individual Defendants (Aiding & Abetting)

52. Plaintiff repeats and realleges the allegations set forth in 1 through 34, 36 through 41, 43 through 45, and 47 through 49, and 50 above as though fully set forth herein.

53. The individually named defendants (to wit: defendant's representative and the COO) also violated the New York State Human Rights Law in that they aided and abetted defendant's religious discrimination towards plaintiff as detailed hereinabove.

### AS AND FOR A SIXTH CAUSE OF ACTION
NEW YORK CITY HUMAN RIGHTS LAW
Against APPARATUS

54. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34, 36 through 41, 43 through 45, and 47 through 49 above as though fully set forth herein.

55. The actions of defendant against plaintiff as alleged herein violate the New York City Human Rights Law.

### AS AND FOR A SEVENTH CAUSE OF ACTION
NEW YORK CITY HUMAN RIGHTS LAW
Against Individual Defendants (Aiding & Abetting)

56. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 34, 36 through 41, 43 through 45, and 47 through 49, and 54 above as though fully set forth herein.

57. The individually named defendants (to wit: defendant's representative and the COO) also violated the New York City Human Rights Law in that they aided and abetted defendant's religious discrimination towards plaintiff as detailed hereinabove.

WHEREFORE, plaintiff respectfully requests that this court enter judgment in his favor granting the following relief:

(i)   Declaring that defendant's denial of plaintiff's religious accommodation request for exemption from defendant's requirement that he be vaccinated against COVID-19 on the basis of his sincerely held religious beliefs constituted unlawful religious discrimination in violation of Title VII of the Civil Rights Act of 1964, and New York State and City Human Rights Law, respectively; and,

(ii)  Awarding plaintiff backpay in an amount to be determined at trial; and,

(iii) Awarding plaintiff additional monetary damages for the emotional distress and hardship he suffered due to defendants' actions; and,

(iv)  Awarding plaintiff punitive damages in the amount of Five Hundred Thousand Dollars; and,

(v)   Attorneys fees and costs; and,

(vi)  Such other and further relief as this Court may deem just and proper.

Dated: Locust Valley, New York
January 20, 2023

Respectfully Submitted,

KRISTINA S. HEUSER, P.C.

By:   _____/S/_____
Kristina S. Heuser, Esq. (KH3612)
Post Office Box 672
Locust Valley, New York 11560
Tel. (516) 676-1565
Fax (516) 676-6382
E-mail kheuser@heuserlawfirm.com